IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

## CURTIS BUFORD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27483    Paula Skahan, Judge**

---

**No. W2006-02125-CCA-R3-PC  - Filed October 2, 2007**

---

The petitioner, Curtis Buford, was convicted in the Shelby County Criminal Court of aggravated robbery, and he received a sentence of twenty years in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his counsel was ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

John B. Curtis, Memphis, Tennessee, for the appellant, Curtis Buford.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The petitioner was originally indicted on one count of aggravated kidnapping and two counts of aggravated robbery of the victim, Ronald Goodwin. At trial, the State presented proof that the petitioner and the victim had seen each other previously, but they did not know each other by name. On the night of the incident, the petitioner and the victim saw each other in Vick's Lounge and shared a "40-ounce" beer. Afterward, the appellant agreed to give the petitioner a ride home. During the ride, the petitioner pulled a gun on the victim and demanded his money. The victim relinquished his wallet containing his credit cards and approximately twenty-one dollars in cash. The petitioner ordered the victim to continue driving to the "southside." During the drive, the victim saw an opportunity and "tussle[d]" with the petitioner for the gun. The victim wrested the gun from the

petitioner and demanded that the petitioner return his property. The petitioner returned all property except the cash, and the victim allowed the petitioner to walk away. The victim drove home and called police. Approximately one year after the incident, the victim died of cardiac arrest.

At trial, the State introduced the victim's statements and preliminary hearing testimony, testimony of the police officers who interviewed the victim, and the testimony of the victim's wife. The petitioner, who did not testify at trial, told police that the victim tried to rob him, but he was able to get away. Based upon the foregoing proof, the jury acquitted the petitioner of aggravated kidnapping but found him guilty of two counts of aggravated robbery. On appeal, this court affirmed the sufficiency of the evidence supporting the aggravated robbery convictions; however, we concluded that the petitioner's multiple convictions for aggravated robbery violated double jeopardy. Therefore, we ordered that the case be remanded for a merger of the convictions. State v. Curtis Buford, No. W2003-00370-CCA-R3-CD, 2004 WL 385200, at **1-4 (Tenn. Crim. App. at Jackson, Mar. 2, 2004).

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective by failing to impeach the victim's testimony with the inconsistencies in his statements and preliminary hearing testimony and that counsel should have had the gun tested for fingerprints.[1] At the post-conviction hearing, the petitioner testified that prior to trial he met with trial counsel five or six times, and the meetings lasted from fifteen to thirty minutes. He acknowledged that counsel gave him a copy of discovery, but he maintained that counsel did not contact all of the witnesses whom he requested.

The petitioner said, "I feel that it was a lot of things she could had did that would of found me innocent of the charge." The petitioner specifically complained that there were no fingerprints linking him to the gun or to the victim's truck. The petitioner stated that he asked counsel to have the gun tested for fingerprints. The petitioner presented proof at the post-conviction hearing that the gun had been lost subsequent to trial and could not be tested for fingerprints prior to the post-conviction hearing.

The petitioner's trial counsel testified that she began representing the petitioner when the case was in general sessions court. Counsel stated that her file on the petitioner's case had been misplaced; therefore, she could not recall everything that transpired during the course of her representation. Counsel stated that she typically shares all discovery with her clients and reviews the materials with them. Counsel recalled that the petitioner informed her prior to trial that the victim had died. Therefore, counsel anticipated that the State would make a plea offer prior to trial. Counsel said that the State offered to allow the petitioner to plead guilty to aggravated robbery, with a sentence of eight years as a Range I offender. Counsel said that the petitioner declined the offer even though petitioner knew he was a Range II offender.

---

[1] The petitioner raised additional issues in his post-conviction petition. However, these are the only issues that were raised in the instant appeal.

Counsel stated that she did not have the gun tested for fingerprints because the petitioner told her that he and the victim struggled over the gun. Counsel knew that the petitioner's fingerprints would likely be found on the gun. Counsel believed that the results of the test could be harmful to petitioner's case if his fingerprints were found on the gun's handle. Counsel believed that a fingerprint test could hurt the defense more than help, and she did not want to give the State more "ammunition" against the petitioner. Additionally, counsel planned to point out in her closing argument that the State had not had the gun tested for fingerprints.

Counsel said that as a result of the victim's death, her trial strategy changed. She said that she might have done things differently if the victim had testified at trial. Counsel acknowledged that she did not focus on inconsistencies in the victim's statements and preliminary hearing testimony. However, she was able to use the wife's testimony to show the inconsistencies. She explained:

> I had to tailor my style different ways because I did not want the victim to garner the sympathy of the jurors. My attacking somebody that was not there in such a way because the state would have been able to say well, he would have had an opportunity to explain and he was not here to give his explanation or whatever.

She said that she did not want to give the State the opportunity to assert that the statements were inconsistent because they were made at different times after the incident while the victim was under differing levels of stress or excitement.

Counsel stated that if there are significant discrepancies in a witness' testimony she will raise them. However, she said that raising every minute discrepancy is not beneficial to the case. She stated that she did not want to "boggle [the] jury up with things that are just too minute." She maintained that she wanted the jury to trust her and that if she exploited every little discrepancy, the jury would "tire of me until I can bring them something significant."

Based upon the foregoing, the post-conviction court found that counsel was not ineffective, specifically finding that counsel's alleged errors could be attributed to trial strategy. On appeal, the appellant challenges this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v.

State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

As we have noted, the petitioner specifically contends that counsel was ineffective by failing to show the inconsistencies in the victim's testimony and by failing to have the gun tested for the petitioner's fingerprints. The post-conviction court found that counsel's failure to impeach the victim with the inconsistent statements and failure to have the gun tested for fingerprints were decisions made by counsel based upon trial strategy. Counsel testified that she did not want to alienate the jury by attacking a witness who was not there to defend himself, nor did she want to lose the trust of the jury by pointing out every inconsistency in the victim's statements and preliminary hearing testimony. Counsel also explained her reasoning for not having the gun tested for fingerprints. The petitioner acknowledged to counsel that he had touched the gun, and counsel was aware that the petitioner's fingerprints would likely be found on the gun. Counsel was concerned that test results could be detrimental to the petitioner's case. We agree with the post-conviction court that counsel's decisions were valid and based upon trial strategy. Our law is well-established that this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Therefore, we conclude that the post-conviction court did not err in finding that the petitioner failed to meet his burden of proving that counsel was ineffective.

We note that the petitioner also contends that "if a post-conviction court concludes that trial counsel's failure to have certain evidence examined . . . rises to the level of deficient performance, the analysis must then follow the principles set forth in State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999)." However, neither the post-conviction court nor this court concluded that counsel's failure to have the gun tested was deficient performance; accordingly, we need not address this issue further.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE